Richard E. BIXBY, as Trustee in Bankruptcy of Cecil L. Slavens, Bankrupt, Plaintiff-Appellant,

v.

FIRST NATIONAL BANK OF ELWOOD, Defendant-Appellee.

No. 12037.

United States Court of Appeals Seventh Circuit.

Dec. 10, 1957.

Rehearing Denied Jan. 8, 1958.

714

Sigmund J. Beck, Indianapolis, Ind., Alan I. Klineman, Indianapolis, Ind., Bamberger & Feibleman, Indianapolis, Ind., of counsel, for appellant.

Henry C. Ryder, Keith W. Tyler, Indianapolis, Ind., Buschmann, Krieg, DeVault & Alexander, Indianapolis, Ind., of counsel, for appellee.

Before LINDLEY, SCHNACKENBERG and PARKINSON, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

According to the judgment of the district court from which plaintiff, as trustee in bankruptcy of Cecil L. Slavens, bankrupt, has appealed, preferential transfers amounting to $11,519.50, made by the bankrupt to defendant on February 4th and 6th, 1954, are voidable. However, the district court refused to so adjudicate similar transfers between the same parties, amounting to not less than $28,785.30, on the ground that they were made *prior to February 3, 1954*. Plaintiff says this was error.

On April 19, 1954, an involuntary petition in bankruptcy (herein referred to sometimes as the "original petition") was filed. It alleged:

"7(a) Within four months next preceding the filing of this Petition, the said Cecil L. Slavens committed an act of bankruptcy, in that he transferred, while insolvent, portions of his property to one or more creditors, with intent to prefer such creditors over his other creditors.

(b) That within four months next preceding the filing of this Petition, the said Cecil L. Slavens concealed, removed or permitted to be concealed or removed, a part of his property, with intent to hinder, delay or defraud his creditors or any of them, or made or suffered a transfer of part of his property, which transfer was fraudulent under the provisions of Sections 67 or 70 of the Bankruptcy act [11 U.S.C.A. §§ 107, 110]."

On April 29, 1954, Slavens filed a motion to dismiss the petition. The referee in bankruptcy on June 2, 1954 heard this motion and petitioning creditors' motion for leave to amend their petition, and he entered an order sustaining the bankrupt's contention that the aforesaid language in the petition was "defective in not specifically setting forth the acts of bankruptcy alleged". He gave leave to the petitioning creditors to file an amended petition by June 6, 1954, directing the bankrupt to plead thereto by June 16, 1954. The referee in bankruptcy further ordered that "if no Amendment to the Petition is filed on or before the 6th day of June, 1954, as herein provided for, the aforesaid Creditors' Petition shall be deemed dismissed."

No dismissal order was ever entered, because on June 3, 1954 an amended petition was filed. It alleged, *inter alia:*

"That within four months next preceding the filing of this petition, * * *, Slavens committed an act of bankruptcy, in that he transferred, while insolvent, certain of his property, by executing and delivering to the First National Bank of Elwood, Indiana, on or about February 4, 1954, a Chattel Mortgage covering all of the personal property machinery and equipment in his place of business in Elwood, Indiana, for the benefit of said First National Bank of Elwood, Indiana, a creditor, for or on account of antecedent indebtedness, the effect of which transfer will be to enable such creditor to obtain a greater percentage of its debt than some other creditor of the same class."

On October 28, 1954 Slavens was adjudicated a bankrupt. All proceedings from April through October 28, 1954

continued under the same caption and docket number in the bankruptcy court.

The amended petition set forth in specific detail divers alleged acts of bankruptcy, including that of February 4, 1954, supra. On June 15, 1954, Slavens filed a motion to strike and dismiss the creditors' amended petition. No ruling was made on that motion.

Plaintiff commenced this action on January 31, 1956 against defendant alleging voidable preferential transfers amounting to $61,475.15 made by the bankrupt to defendant during the period of January 25 to April 19, 1954.

Defendant filed its answer. On defendant's motion, the district court on July 27, 1956 granted a partial summary judgment in favor of defendant, holding that June 3, 1954 was the date that the petition initiating the proceedings was filed and "that only such preferential transfers made or suffered within four months before such date can be avoided * * * ."

The judgment of July 27, 1956 was incorporated in the judgment appealed from.

Relevant statutory provisions are contained in the Bankruptcy Act. Section 1(13) [1] provides:

" 'Date of bankruptcy', 'time of bankruptcy', 'commencement of proceedings', or 'bankruptcy', with reference to time, shall mean the date when the petition was filed;"

Section 60, sub. a(1) [2] provides:

"A preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, * * * ."

Section 70 [3] provides:

"(a) The trustee of the estate of a bankrupt and his successor or successors, if any, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title, * * * ."

General Order 37 In Bankruptcy [4] provides in part:

"In proceedings under the Act the Rules of Civil Procedure for the District Courts of the United States shall, in so far as they are not inconsistent with the Act or with these general orders, be followed as nearly as may be. * * * "

Rule 15(c) of the Federal Rules of Civil Procedure, [5] provides:

"(c) Relation Back of Amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

■ It is recognized that the general rules of pleading and practice apply to proceedings in bankruptcy. 8 C.J.S. Bankruptcy § 115, p. 534.

In 8 C.J.S. Bankruptcy § 114, p. 533, it is said:

"The filing of a petition, sufficient on its face, by three petitioners alleging that they are creditors holding provable claims of the requisite amount, the insolvency of defendant and the commission of an act of bankruptcy within the preceding four months, gives the bankruptcy court jurisdiction of the proceeding."

1. 11 U.S.C.A. § 1(13).

2. 11 U.S.C.A. § 96, sub. a(1).

3. 11 U.S.C.A. § 110.

4. 11 U.S.C.A. § 53, Order 37.

5. 28 U.S.C.A. Rule 15(c).

And § 117, at page 540, the following statement is added:

"Under the power vested in the court by Bankruptcy Act § 30 [11 U.S.C.A. § 53 Order XI], the court, in the exercise of its sound discretion, may allow the petitioning creditors to amend an involuntary petition in bankruptcy to cure defects which are not jurisdictional, and it has been stated that such amendments are allowed with great liberality. * * *

"In accordance with these rules it has been held that an amendment may be permitted to correct * * * an insufficient statement regarding the act or acts of bankruptcy relied on; * * *."

At page 543 it is said:

"*Effect of amendment.* If the amended pleading does not set up new matter or a new cause of action, it will be regarded as a continuation of the original, and will relate back so as to take effect as of the date when the original was filed, * *. Likewise, if the original petition is sufficient on its face, that is, containing all the averments essential to its maintenance, an amendment will take effect as of the date of the original petition, provided the amendment does not involve the introduction of a new and different cause of action. * * *"

In In re Claudon, 7 Cir., 73 F.2d 876, 877, an original petition in bankruptcy charged that the alleged bankrupt being insolvent,

" * * * within four months next preceding the date of this petition * * * committed an act of bankruptcy, in that he did heretofore, to wit, on the 9th day of September, A.D. 1927 permit attachments to be entered in the Circuit Court of Livingston County and levied upon property of the said A. B. Claudon."

Later the petitioning creditors asked leave to amend to include allegations that "Claudon is insolvent" and also that he permitted attachments to be entered in the Circuit Court of Livingston County, Illinois, and levied upon his property and that he suffered or permitted certain creditors, which he named, with the amounts of their respective claims, to obtain through legal proceedings commenced on a stated date in said circuit court, attachment writs which were duly issued and delivered to the sheriff and levied on real estate of Claudon, etc.

We held that the amendment was properly related back to the date of the filing of the original petition, saying, at page 878:

"This order might be questioned if the amendment set forth a new act of bankruptcy, that is, a different act from that attempted to be set forth in the original petition; but if it set forth more perfectly the same act which was attempted to be set forth in the original petition, the order that it should relate back was proper."

A convincing statement of the reasoning which should prevail in the case at bar, is contained in the First Circuit case of Harney Shoes, Inc. v. National Fabric & Finishing Co., 44 F.2d 517. There the petitioning creditors, when confronted with a motion to dismiss their petition, were given leave to amend. At page 518, the court said:

"The gist of the appellant's contention is that the court below erred in grounding jurisdiction on the general allegation of preferences, without particulars as to dates, creditors, and kind of property transferred. This contention cannot be sustained.

"The general allegation of preferences to persons unknown, while insufficient, was amendable, as held by the Court of Appeals in the Second Circuit in Bradley v. Huntington, 277 F. 948. The defect was not jurisdictional. If the respondent had seasonably asked for a hearing on the motion to dismiss, it might per-

haps have been granted, but with leave to amend. The amendment was nothing but in the nature of a bill of particulars. It did not set up new and independent acts. Millan v. Exchange Bank of Mannington, 4 Cir., 183 F. 753. All it did was to give greater precision to charges already seasonably made. In re Bieler [2 Cir.] 295 F. 78. The case falls within the principle laid down by this court in the Harris Case, [1 Cir.] 299 F. 395, 400, [39 A.L.R. 252] where Judge Bingham said:

" 'The main purpose of the Bankruptcy Act [11 U.S.C.A.] is that the assets of an insolvent person, who has committed an act or acts of bankruptcy within four months before the filing of an involuntary petition against him, shall be equally distributed among his creditors. It cannot be that Congress intended that this purpose should be defeated by a resort to technicalities in pleading, and that petitioners, who have set forth in their petition facts constituting a sufficient ground of complaint to warrant an adjudication of bankruptcy, should not be permitted by amendment to add other facts in support of the same general ground of complaint.' "

The motion to dismiss the original petition in the case at bar had, as its counterpart in equity pleading, what was known as a special demurrer, which reached only formal defects such as want of certainty or in general any defects readily curable by amendment. The motion was not in the nature of a general demurrer which was directed to matters of substance. 30 C.J.S. Equity §§ 278, 280, pp. 715, 717.

In In re Haskell, 7 Cir., 73 F.2d 879, a petitioning creditor was denied leave to amend his petition *nunc pro tunc.* The purpose of the amendment was to add to the statement in the original petition as to one transaction, the following phrase "said transfer and conveyance * * * being done * * * with intent to unlawfully hinder, delay and defraud your petitioner, a creditor" and to another transaction, the phrase "with intent to prefer said creditor * * * over your said petitioner, a creditor * * *." It was claimed by appellant that these phrases had been omitted from the original petition through inadvertence. At page 880, this court said:

" * * * Amendments to pleadings in all courts are therefore allowed with great liberality. * * * In the instant case, if the amendments are not allowed, then the alleged debtor will have succeeded in conveying property to the benefit of one creditor and at the expense of all his other creditors. Such a preference he may not make within four months of the filing of the petition in bankruptcy. It is the filing of the petition that stops the running of the four months. It would be a most severe penalty imposed upon all the creditors of the bankrupt, of whom petitioner is but one, if his request for amendment were denied.

* * * * * *

"Likewise, the objection that the date of the execution of the mortgage was not given, fades away in the light of the allegation that said bankrupt executed a mortgage of real estate for the sum of $26,000 'while insolvent and within four months next preceding the date of this petition.' The significant fact is not the date of the execution of the mortgage, but rather that it was within four months of the date of said petition.

* * * * * *

"Under all the circumstances we conclude that the court erred in the exercise of its discretion in refusing to allow the amendments."

In In re Shoesmith, 7 Cir., 135 F. 684, at page 688, we said:

"Another question suggested at the argument has relation to the jurisdiction of the court below. It is contended that because the first pe-

718

tition filed by the creditor was defective, and a sufficient amended petition was filed more than four months after the last fraudulent transfer of the property, the court had no power to permit an amendment, and was therefore without jurisdiction to entertain the proceedings. The district court had jurisdiction of the parties. It had jurisdiction of the subject-matter. It has general and exclusive jurisdiction of bankruptcy proceedings. The objection goes to the want of equity exhibited by the petition, not to the want of power in the court. There was jurisdiction to determine the sufficiency of the petition, and it was complete to permit any amendment. The jurisdiction in such cases comes from the statute, and is not conferred by the accuracy and precision of the averments made in the petition. Smith v. McKay, 161 U.S. 355, 358, 16 S.Ct. 490, 40 L.Ed. 731; Blythe v. Hinckley, 173 U.S. 501, 19 S.Ct. 497, 43 L.Ed. 783. And the amendment, when filed, relates to and takes effect as of the date of the filing of the original petition. Bank v. Sherman, 101 U.S. 403, 25 L.Ed. 866."

The weakness of defendant's position is emphasized by its reliance upon In re Louisell Lumber Co., 5 Cir., 209 F. 784, 787, to support its summarizing statement that—

"* * * But a petition is not a caveat as to prior transfers, and it would defeat the purpose of the Bankruptcy Act if petitioning creditors could file a skeleton petition in which no *specific* acts of bankruptcy are alleged, knowing that any subsequent amended petition will be held to relate back. For this reason the courts have refused to relate back the amended petition in such instances." (Italics supplied for emphasis.)

Defendant fails to discern that in the Louisell case there was no defective statement of an act of bankruptcy. In-

stead, there was a complete absence of an allegation of any act of bankruptcy. As the court said, at page 786:

"* * * This is not a case, therefore, * * * in which a defective statement of an act of bankruptcy is made and it is sought to amend the defect by a more accurate statement. On the contrary, no cause of action to have the debtor adjudicated a bankrupt is stated, or attempted to be stated, in the original petition. More than four months, in fact about eight months, after the levies, the amendment is made, and (treating the amendment as sufficient) it is then for the first time that there appears on the record a cause of action authorizing the adjudication of the debtor to be a bankrupt.

"The amendment of a petition in bankruptcy is permissible as in the case of pleadings in other actions. And it is true that, when an amendment is properly allowed and is for the same cause of action asserted in the original pleading, giving greater precision to charges already made, and does not set up new matter or a new cause of action, the amended pleading will be regarded as a continuation of the original pleading, and will relate back so as to take effect as of the date when the latter is filed. [Citing cases] This rule is, of course, applied to amendments of petitions in bankruptcy."

 In the case at bar, we hold that the mere making specific by amendment of the allegation of an act of bankruptcy contained in the original petition, was not the statement of a new cause of action. The amendment merely stated in more detail the act of bankruptcy set up in the original petition. The motion to dismiss in this case was not in the nature of a general demurrer, attacking the substance of the original petition. It was in the nature of a special demurrer charging that the allegation of an act of bankruptcy in the original peti-

tion was not specific. The sustaining of the motion to dismiss, in the nature of a special demurrer, did not dispose of the bankruptcy proceeding. It merely called upon the petitioning creditors to specify the details of the act of bankruptcy upon which they relied. The amendment which followed enabled the bankrupt to know exactly what he was called upon to meet. At all times the original petition was the petition which initiated the proceeding.

The amended petition related back to the date of the filing of the original petition and all preferences created within four months prior to the filing of the original petition were voidable and the district court erred in holding otherwise.

For these reasons, the judgment from which this appeal has been taken is reversed as to preferences made within four months prior to the filing of the original petition and not set aside by the district court's judgment. Otherwise, it is approved. This cause is remanded for further proceedings in accordance with the views herein expressed.

Reversed and remanded with directions.

PARKINSON, Circuit Judge (dissenting).

General Order in Bankruptcy 38, 11 U.S.C.A. following section 53, provides that the several forms annexed to the general orders shall be observed and used, with such alterations as may be necessary to suit the circumstances of any particular case. Official Form No. 5 is that of a creditors' petition with rhetorical paragraph 4 being as follows:

"Within four months next preceding the filing of this petition, the said...... ............ committed an act of bankruptcy, in that he did heretofore, to-wit, on the ...... day of ................, 19 ...., ..........................; .................................. ,,

I believe that petitioning creditors cannot completely ignore the mandate of that Order. I also believe it to be the law that an involuntary bankruptcy petition alleging in the language of the statute, without any specification of any of the facts claimed as a basis therefor, that the purported bankrupt had made transfers with intent to prefer creditors is fatally defective and, if amended to actually state a voidable preference, the date of the amendment must be taken as the date from which the four months period is to be calculated. In re Condon, 2 Cir., 1913, 209 F. 800; Hovland v. Farmers' State Bank, 8 Cir., 1926, 10 F.2d 478; In re Fuller, 2 Cir., 1926, 15 F.2d 294; In re Gaynor Homes, 2 Cir., 1933, 65 F.2d 378; Dworsky v. Alanjay Bias Binding Corporation, 2 Cir., 1950, 182 F.2d 803.

The cases relied upon by the majority are, in my opinion, inapposite. In Shoesmith the exact character of the amendment does not appear and in that case and in Harney Shoes the question was whether the Bankruptcy Court had jurisdiction in proceedings grounded upon a defective petition alleging an act of bankruptcy in the language of the statute and had the power to permit an amendment. There is no question but what the court in the instant case had jurisdiction and had the power to permit the filing of the amended petition, however, the question here is whether the four months period under Section 60(a) of the Bankruptcy Act, 11 U.S.C.A. § 96(a), shall be calculated from the filing date of the original petition, which was ineffectual, or from that of the amended petition, which was valid. The statement by this court in Shoesmith that an amendment relates back to the filing of the original petition was *obiter dictum*.

In Claudon the original petition did allege a specific act of bankruptcy in that Claudon "committed an act of bankruptcy, in that he did heretofore, to wit, on the 9th day of September, A.D. 1927 permit attachments to be entered in the Circuit Court of Livingston County and levied upon property of the said A. B. Claudon." The amended petition simply amplified the same act of bankruptcy. In Haskell a similar situation existed and this court held in both that the

amendment related back. I agree with these decisions but they are not dispositive of the question in the case at bar.

I also agree that Rule 15(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A., should be liberally construed but there is a point beyond which that liberality cannot be extended. Before the doctrine of relation back can have proper application it must appear that the pleader knew and attempted to state in his original petition some definite conduct, transaction or occurrence the imperfection whereof he seeks to cure by the amendment. In this case the motion for leave to file an amended petition shows upon its face that the petitioning creditor did not know of any definite act constituting a voidable preference at the time it filed the original petition, April 19, 1954, and did not learn the facts until examination of the bankrupt long afterwards. It was then that it entered the motion for leave to file an amended petition. The record conclusively shows that the original was a "shotgun" petition. Thus the record forecloses any pretense of asserting that the original petition set forth or attempted to set forth the same act of bankruptcy alleged in the amended petition. Under such a record as here there can be no relation back.

In the case of Dworsky v. Alanjay Bias Binding Corporation, 2 Cir., 1950, 182 F.2d 803, 805, the Second Circuit had before it the question of relation back under facts similar to those here in controversy and that court held that the amended petition did not relate back because to so hold would amount to amending Section 3 sub. b of the Bankruptcy Act, 11 U.S.C.A. § 21(b). In so doing it pointed out that it had earlier held the doctrine of relation back would apply only where there was a showing that the pleader knew and in his original petition had "attempted to state, some definite conduct, transaction or occur-

rence" complained of. The record here patently shows no such attempt was made.

In the case of International Bank v. Sherman, 1880, 101 U.S. 403, 25 L.Ed. 866, the alleged bankrupt transferred some of his assets after the original petition was filed and the court held that the filing of the original petition was a caveat to all the world and those who dealt with the property of the alleged bankrupt between the filing of the petition and adjudication of bankruptcy did so at their peril. The court further held that the amendment of the original petition related back and title vested in the assignee as of the date of the filing of the original petition but in that case there is no indication that the original petition was simply a skeleton or blank petition in the general language of the Act and that the amended petition was the only petition which was a valid one, as is the case here. Also in Sherman "the original petition was in nowise either dismissed or abandoned," but here the motion of the alleged bankrupt to dismiss the original petition was sustained and the original petition did not initiate the proceedings. The District Court so concluded when it held that the amended petition filed on June 3, 1954 was the petition initiating the proceedings under Section 60, sub. a of the Act.

I regret to disagree with the majority but the record before this court affirmatively shows that the facts alleged in the amended petition were unknown to the petitioning creditor when it filed the original petition. The amended petition, therefore, declared upon an act of bankruptcy not alleged in the original petition. I believe the District Court was correct in concluding that the amended petition filed on June 3, 1954 was the petition initiating the proceedings under Section 60, sub. a of the Bankruptcy Act. I would affirm.