# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1718

_____

In re: Payless Cashways, doing business   *
as Payless Cashways, doing business as   *
Furrow, doing business as Lumberjack,   *
doing business as Hugh M. Woods,   *
doing business as Somerville Lumber,   *
doing business as Knox Lumber, Inc.,   *
  *
         Debtor,   *
_____   *
  *
Amtech Lighting Services Company,   *
  *   Appeal from the Bankruptcy
         Appellant,   *   Appellate Panel.
  *
     v.   *
  *
Payless Cashways, Inc.,   *
  *
         Appellee,   *
_____   *
  *
International Association of Lighting   *
Management Companies,   *
  *
        Amicus on Behalf of   *
         Appellant.   *

_____

Submitted:  December 16, 1999

Filed:  February 16, 2000

_____

Before BEAM, HEANEY, and HANSEN, Circuit Judges.

_____

BEAM, Circuit Judge.

The Bankruptcy Appellate Panel[1] determined that Amtech Lighting Services Company (Amtech) was not entitled to a mechanic's lien under Texas law. Amtech appeals, and we affirm.

## I.     BACKGROUND

Payless Cashways (Payless) is a retailer of home improvement items. Before it filed for bankruptcy, it had stores in twenty states. Amtech designs, builds, and maintains internal and external lighting systems for businesses.

In April 1995, Payless contracted with Amtech to retrofit and relamp ceiling-mounted lighting fixtures at 164 Payless stores. The contract also called for Amtech to maintain[2] those fixtures over the next forty-eight months. Within the contract, the terms and conditions for the retrofitting and relamping were identified as "Initial Services," and the terms and conditions for the maintenance were identified as "Continuing Services." Under this agreement, Payless did not have to pay up-front for the initial services but rather the parties agreed to a credit arrangement in which the

_____

[1]The Honorable William A. Hill, Nancy C. Dreher, and William L. Edmonds, Bankruptcy Judges for the Bankruptcy Appellate Panel of the United States Court of Appeals for the Eighth Circuit.

[2]Maintenance included inspecting the location for burned-out bulbs and replacing inoperative lights, ballasts, lamp holders, and wiring on both a regular and an emergency basis.

payment for the initial services was amortized over forty-eight months. In addition to the monthly payments for the initial services, Payless paid a monthly fee for the continuing services, and paid the cost for replacement light bulbs, lamps, and supplies.

Amtech completed the installation work in the Texas stores on April 8, 1996. Amtech then performed routine maintenance and made necessary repairs. Throughout this period, Payless paid both the monthly amortized installation fee and the maintenance fee.

On July 21, 1997, Payless filed for Chapter 11 bankruptcy in the Western District of Missouri. Pursuant to 11 U.S.C. § 365, Payless advised Amtech that it would reject the contract effective October 1, 1997. Amtech then filed a claim with the bankruptcy court for $1,733,449.84, which represents the remaining amount due for the initial installation for the stores in Minnesota, Nevada, Oklahoma, and Texas.[3] Of this amount, $1,162,201.45, was for the Texas stores.

Amtech asserted that its claim was secured under the mechanic's lien statutes of those four states. Payless disputes Amtech's status as a secured creditor, but it does admit Amtech has an allowable unsecured claim.

The bankruptcy court rejected Amtech's secured claim under all four states's laws, reasoning that the contract was divisible—one part consisting of the initial services and one part consisting of the continuing services. Because the contract was severable, the court found that the time period within which the mechanic's liens needed to be filed began to run upon the completion of the initial installation work, and Amtech did not file a lien within the required time period in any state. Additionally, the bankruptcy court rejected Amtech's claim that it could have been liable for slander of

---

[3]Amtech claimed it still was owed money in sixteen states, but did not claim mechanic's liens in any of those states.

title had it filed mechanic's liens before Payless stopped making payments. Amtech appealed the decision to the Bankruptcy Appellate Panel which affirmed.

Amtech appeals, and only challenges the panel's decision regarding Texas law. It contends that the contract is not divisible and therefore it has properly perfected its lien. Additionally, it asserts that the continuing services portion of the contract is also lienable.

## II.    ANALYSIS

Under Texas law, a person is entitled to a lien if she labors and/or provides materials for the construction or repair of a building. See Tex. [Property] Code Ann. § 53.021 (West 1995). To properly perfect a lien, the person entitled to the lien must record it by the fifteenth day of the fourth month after the indebtedness accrues, which, for an original contractor, is the last day of the month when the project was completed. See Tex. [Property] Code Ann. §§ 53.052, 53.053 (West 1995). The overarching issue in this case is whether Amtech properly perfected its lien and therefore is entitled to be a secured creditor.

Amtech asserts that the project was complete under Texas law on October 1, 1997, the effective date of Payless's rejection of the contract, and therefore the lien was perfected when Amtech filed the claim with the bankruptcy court. The Bankruptcy Appellate Panel, however, found that the contract was divisible and as a result the time to file the lien began to run on April 8, 1996, and therefore was not properly perfected. We agree.

## A.	CHOICE OF LAW

The Bankruptcy Appellate Panel erred when it analyzed the issue of severability of the contract under Minnesota, Nevada, Oklahoma, and Texas law although there was only one contract that covered all twenty states.  The use of this approach potentially could result in inconsistent interpretations of the contract because states could have differing rules regarding the construction of a contract.  Thus, we believe the contract should be analyzed under one state's law.

The bankruptcy court applies the choice of law rules of the state in which it sits. See In re Mastercraft Metals, Inc., 114 B.R. 183, 186 (Bankr. W.D. Mo. 1990).  With respect to contract issues, Missouri applies the "most significant relationship" test.  See Dillard v. Shaughnessy, Fickel and Scott Architects, Inc., 943 S.W.2d 711, 715 (Mo. Ct. App. 1997).  This test requires the court to determine and weigh: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties.  See id. (adopting Restatement (Second) of Conflict of Laws § 188 (1971)).

Regarding the choice of law determination, the following facts are undisputed. Amtech is located in California and has an office in Texas. Payless has its corporate headquarters in Missouri.  Additionally, the contract was the result of proposals faxed between Arlington, Texas, and Kansas City, Missouri.  The contract was signed by Payless in Kansas City, and by Amtech in Texas.  Finally, the work that was the subject of the contract was completed in twenty states, but of the 164 stores that were retrofitted, approximately forty of them were in Texas.  Thus, either Missouri or Texas law would apply to the issue of divisibility.  However, because the relevant law of both Missouri and Texas is substantially similar, we will not entangle ourselves  in the morass of a choice of law determination.  See Phillips v. Maris Soc'y of Wash. Province, 80 F.3d 274, 276 (8th Cir. 1996).

## B.    DIVISIBILITY

If the terms of a contract are explicit, as they are in this case, then the construction of that contract is a question of law for the court and subject to de novo review. See Local 781 Int'l Assoc. of Firefighters v. City of Independence, 996 S.W.2d 112, 115 (Mo. Ct. App. 1999); Click v. Seale, 519 S.W.2d 913, 918 (Tex. App. 1975).

A divisible contract is "in legal effect, independent agreements about different subjects though made at the same time." Grease Monkey Int'l, Inc. v. Godat, 916 S.W.2d 257, 261 (Mo. Ct. App. 1995). The primary inquiry when determining if a contract is divisible is the intent of the parties. See id.; Johnson v. Walker, 824 S.W.2d 184, 187 (Tex. App. 1991). The intent can be surmised by examining the language that the parties used and the subject matter of the agreement. See Grease Monkey, 916 S.W.2d at 261; Johnson, 824 S.W.2d at 187. Some factors to be considered when deciding if a contract is severable include: whether the consideration is apportioned; whether the subject matter is divisible; whether the contract had to be taken as a whole or not at all; and whether there could be "performance of one portion or act, and nonperformance of another, with acceptance of the performed portion by the other party." Click, 519 S.W.2d at 918; see also HGS Homes, Inc. v. Kelly Residential Group, Inc., 948 S.W.2d 251, 256 (Mo. Ct. App. 1997).

We find several of these factors present in this case. Within the contract there are clearly delineated sections—one for "Initial Services" and one for "Continuing Services." Consideration is apportioned between the monthly amortized cost for the installation, and the monthly maintenance fee. See Sanfillippo v. Oehler, 869 S.W.2d 159, 161 (Mo. Ct. App. 1993); Hamilton v. Texas Oil & Gas Corp., 648 S.W.2d 316, 320 (Tex. App. 1982). Additionally, either party could terminate the continuing services portion of the contract with or without cause. If a party chose to terminate the agreement, Payless continued to be responsible for the remaining payments for the

initial services that had been rendered, but no longer had to pay the maintenance fee. While both agreements were contained within one document, that alone does not defeat a finding of divisibility. See Click, 519 S.W.2d at 918. Therefore, we find that the contract was divisible, and that the time for filing the mechanic's lien expired on August 15, 1996. See Tex. [Property] Code Ann. §§ 53.052, 53.053 (West 1995). Consequently, Amtech is not a properly perfected creditor.[4]

## III.  CONCLUSION

Accordingly, we affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[4]Having determined that the contract is divisible, we need not reach Amtech's contention that the continuing services section of the contract included lienable work.